1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

7
8
9   ARTHUR T. BUSSIERE,                      Case No.  1:13-cv-01565-AWI-SKO

10                      Plaintiff,            **FINDINGS AND RECOMMENDATION THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED IN PART AND DENIED IN PART**

11
12         v.

13   DR. W. KOKOR, et al.,                   **(Doc. 73)**

14                      Defendants.          **TWENTY-ONE DAY OBJECTION DEADLINE**

15   _____/

16
17
18         Before the Court is Defendants' Motion for Summary Judgment ("Defendants' Motion").

19   (Doc. 73.)  For the reasons provided herein, the undersigned RECOMMENDS that the presiding

20   district court judge GRANT IN PART and DENY IN PART Defendants' Motion.  (*Id.*)

21                              **I.      BACKGROUND**

22         This case arises out of Defendants' medical treatment of Plaintiff, an inmate, at the

23   California Substance Abuse Treatment Facility in Corcoran, California (the "Facility").

24   Defendants W. Kokor and N. Hashemi are "medical doctor[s] employed by the California

25   Department of Corrections and Rehabilitation" (the "CDCR") at the Facility.  (Doc. 73, Ex. 4 ¶ 2;

26   *id.*, Ex. 6 ¶ 2.)  Defendant A. Tiggs-Brown is "a licensed physician's assistant . . . employed by the

27   [CDCR]" at the Facility.  (Doc. 73, Ex. 5 ¶ 2.)

28

**A.     Plaintiff's Medical Conditions**

Plaintiff has been diagnosed with two pertinent medical conditions.  First, Plaintiff has "[e]nd [s]tage [l]iver [d]isease, also known as cirrhosis." (*Id.*, Ex. 4 ¶ 3; *id.*, Ex. 6 ¶ 3.)  "Cirrhosis is a progressive condition that gets worse over time" and "usually progresses to the point where the liver loses most or all of its function—resulting in liver failure." (*Id.*, Ex. 4 ¶ 3; *id.*, Ex. 6 ¶ 3.)

"There are several conditions that occur in patients as part of the . . . progression of cirrhosis[,] such as varices and ascites." (*Id.*, Ex. 4 ¶ 3; *id.*, Ex. 6 ¶ 3.)  Varices "are dilated sub mucosal veins in the esophagus." (*Id.*, Ex. 4 ¶ 4; *id.*, Ex. 6 ¶ 4.)  "Ascites is an accumulation of fluid in the abdomen." (*Id.*, Ex. 4 ¶ 5; *id.*, Ex. 6 ¶ 5.)  Plaintiff has both varices and ascites. (*Id.*, Ex. 4 ¶ 3; *id.*, Ex. 6 ¶ 3.)

Second, Plaintiff "also has acid reflux" disease.  (*Id.*, Ex. 4 ¶ 6; *id.*, Ex. 6 ¶ 6.)  "Acid reflux is a relatively common condition in which stomach acid comes up from the stomach into the esophagus, causing irritation and heartburn." (*Id.*, Ex. 4 ¶ 6; *id.*, Ex. 6 ¶ 3.)  Acid reflux disease "is completely unrelated to cirrhosis, varices, and ascites." (*Id.*, Ex. 4 ¶ 6; *id.*, Ex. 6 ¶ 3.)  "Acid reflux can be treated with a proton pump inhibitor medication such as Prilosec – generic name Omeprazole." (*Id.*, Ex. 4 ¶ 6; *id.*, Ex. 6 ¶ 3.)  "Plaintiff was prescribed Prilosec to treat his acid reflux." (Doc. 83 ¶ 12.)

**B.     Plaintiff's Pertinent Treatment Relating to Defendants**

1.     <u>Defendant Tiggs-Brown</u>

Defendant Tiggs-Brown "examined and treated Plaintiff on July 23, 2012." (Doc. 73, Ex. 5 ¶ 10.)  In his Complaint, Plaintiff alleges that he "informed" Defendant Tiggs-Brown "that the yard doctor forgot to refill" his "order" for Prilosec before the yard doctor "went on vacation." (Doc. 12 at 5.)  Plaintiff further alleges that Defendant Tiggs-Brown "stated she would not refill the medication because she did not want to go to the MAR committy [sic]," and further "stated [that] the yard doctor could do it in 3 weeks when he returned." (*Id.*)  Finally, Plaintiff alleges that he explained to Defendant Tiggs-Brown "that this would cause [Plaintiff] great pain and to be hospitalized," but Defendant Tiggs-Brown "stated she did not care then had the officers remove

[Plaintiff] from her office."  (*Id.*)  Defendant Tiggs-Brown "had no further involvement with Plaintiff's condition or treatment" after July 23, 2012.  (Doc. 73, Ex. 5 ¶ 11.)

"In Plaintiff's Interrogatories, [he] stated that he ran out of Prilosec on July 28, 2012."  (*Id.* ¶ 15.)  "The medical reconciliation form shows that Plaintiff's Prilosec was renewed on August 3, 2012."  (*Id.*)  "Thus, Plaintiff did not have Prilosec for about seven days."  (*Id.*)  In his declaration, Plaintiff asserts that he "suffer[ed] in pain" without the Prilosec.  (Doc. 76 at 6.)

    2.   <u>Defendants Hashemi and Kokor</u>

Defendant Hashemi "examined and treated Plaintiff" on October 26, 2012.  (Doc. 73, Ex. 4 ¶ 12.)  Dr. Hashemi determined that Plaintiff's "abdomen was normal – there was no tenderness or distention (bulging)," "continued [Plaintiff's] medications," and "instructed [Plaintiff] to follow-up in 10-25 days."  (*Id.*)  In his Complaint, Plaintiff alleges that Defendant Hashemi refused to either "renew [Plaintiff's] Prilosec," or "send . . . Plaintiff out to a hospital for medical treatment." (Doc. 12 at 10.)

"On October 27, 2012, Plaintiff went to the Treatment Triage Area clinic complaining that his stomach was distended and that he had been vomiting for one day."  (Doc. 73, Ex. 6 ¶ 11.) Defendant Kokor "examined Plaintiff" and "noted that Plaintiff complained of abdominal pain diarrhea, and bloody stools."  (*Id.*)  Defendant Kokor determined that Plaintiff's "abdomen was tender and distended" and "referred Plaintiff to an outside hospital for further evaluation in order to check for abdominal bleeding."  (*Id.*)

Plaintiff was admitted to Mercy Hospital in Bakersfield, California on the same date.  (*See, e.g.*, Doc. 73, Ex. 4 ¶ 14.)  Physicians at the hospital made "admitting diagnoses" that Plaintiff suffered from the following: (1) "[g]astrointestinal bleed;" (2) "[s]uspicion for spontaneous bacterial peritonitis;" (3) "[c]irrhosis pancytopenia;" (4) "[d]iabetes;" (5) "[h]ypertension;" and (6) "[h]istory of valley fever."  (Doc. 76 at 64.)

The examining physicians at Mercy Hospital then requested a "gastroenterology consultation" with Dr. Rajeev Krishan on October 28, 2012.  (*See, e.g.*, *id.* at 66.)  Following an

examination by Dr. Krishan, this physician performed an "[e]sophagogastroduodenoscopy"[1]

("EGD") and "variceal ligation with bands" on Plaintiff. (*Id.* at 67.) In his "endoscopic findings,"

Dr. Krishan noted that the "[e]xamination of the esophagus reveal[ed] grade 2 varices, 2 columns

and there [sic] were ligated[2] with bands x4." (*Id.*) Dr. Krishan provided a "plan," which stated, in

relevant part, that Plaintiff should "[r]epeat" an EGD in four-to-six weeks. (*Id.*) While Plaintiff

was admitted at Mercy Hospital, he also underwent an abdominal paracentesis.[3] (*Id.* at 76.)

Plaintiff was discharged from Mercy Hospital on October 30, 2012. (*See, e.g.*, Doc. 89 at

87.) Plaintiff's "physician discharge instructions" provided a "[s]uggestion for follow-up" of

Plaintiff returning in two weeks for a follow-up visit with Dr. Krishan. (Doc. 76 at 76.) Similarly,

Plaintiff's "inmate discharge summary" from Mercy Hospital stated that Plaintiff "[w]ill continue

his medications as before and he will follow [sic] with [Dr.] Krishan in 2 weeks." (Doc. 89 at 87.)

"Plaintiff returned to the prison on October 30, 2012." (Doc. 73, Ex. 6 ¶ 13.) Plaintiff

"was then immediately taken to the prison's Treatment Triage Area . . . , where he received an

intake evaluation, including a review of the medical records from Mercy Hospital." (Doc. 83 ¶ 7.)

Plaintiff was subsequently examined by a "staff doctor," Dr. Jackson, the following day. (*Id.*)

Defendant Hashemi next "examined and treated Plaintiff" on November 2, 2012. (Doc.

73, Ex. 4 ¶ 16.) In his Complaint, Plaintiff alleges that Defendant Hashemi was "put on notice"

regarding the "specilist [sic] orders/recommendations," Plaintiff's "medical records," Plaintiff's

"sick call slips," and "by . . . Plaintiff in person of the danger and pain and suffering . . . Plaintiff

was in." (Doc. 12 at 12.) In his declaration, Plaintiff states that Defendant Hashemi never

"submitted" a "7221 doctors request for services" regarding Plaintiff's follow-up "visit with [his]

specilist/surgan [sic]." (Doc. 76 at 6.) Defendant Hashemi "had no further involvement or control

with Plaintiff's condition or treatment" after November 2, 2012. (Doc. 73, Ex. 4 ¶ 17.)

---

[1] "Esophagogastroduodenoscopy . . . is a test that utilizes an endoscope to examine the lining of the esophagus, stomach, and first part of the small intestine." *Proof v. Intel Corp. Long Term Disability Plan*, No. 2:12–cv–01716–TLN–CKD, 2014 WL 4960927, at *2 n.6 (E.D. Cal. Oct. 1, 2014) (citation omitted).

[2] The term "ligate" means "to tie or bind with a ligature, or otherwise join." *Ligate*, Dorland's Illustrated Medical Dictionary (31st ed. 2007).

[3] An "abdominal paracentesis" involves the "insertion of a trocar through an incision into the peritoneal cavity to inject a therapeutic agent or remove ascetic fluid." *Paracentesis*, Dorland's Illustrated Medical Dictionary (31st ed. 2007).

1    Defendant Kokor "was not involved in treating Plaintiff" from October 30, 2012 to

2    December 9, 2012. (*Id.*, Ex. 6 ¶ 15.) On December 10, 2012, Defendant Kokor "was notified of

3    the overdue follow-up visit with Dr. Krishan." (*Id.* ¶ 17.) Defendant Kokor "examined and

4    treated Plaintiff on this date, and immediately submitted a written request for the prison to

5    schedule the visit with Dr. Krishan." (*Id.*) This "request was granted" and "Plaintiff was taken to

6    Mercy Hospital for the follow-up visit with Dr. Krishan" on December 28, 2012. (*Id.* ¶¶ 17–18.)

7    The additional EGD was also "completed on December 28, 2012." (*Id.* ¶ 18.)

8    In total, Plaintiff's follow-up visit with Dr. Krishan "was about six weeks late." (*Id.*)

9    Plaintiff's additional EGD "was only days beyond the four-to-six week period recommended by

10   Mercy Hospital." (*Id.*) Defendants contend that these delays "appear[] to have been" due to a

11   "scheduling error by staff." (*Id.* ¶ 6.) In his declaration, Plaintiff asserts that he "suffered in pain

12   and with varicies [sic] and ascities [sic]" due to the delays. (Doc. 76 at 6.)

13   **C.    Procedural History**

14   Plaintiff filed the operative Complaint on June 2, 2014. (Doc. 12.) The Complaint

15   includes claims that each Defendant was deliberately indifferent to Plaintiff's medical needs in

16   violation of the Eighth Amendment to the United States Constitution. (*See id.* at 4–12.) Plaintiff

17   requests the following relief in the Complaint: (1) that the Court "order that Plaintiff . . . receive a

18   liver transplant;" (2) monetary and punitive damages; and (3) "a full investigation into . . .

19   [Defendants'] history and medical license and if they should be revoked." (*Id.* at 13.) The end of

20   the Complaint provides that Plaintiff "declare[s] under penalty of perjury that the foregoing is true

21   and correct," followed by Plaintiff's signature and the date. (*Id.*)

22   Defendants filed Defendants' Motion on July 29, 2016. (Doc. 73.) Plaintiff filed separate

23   oppositions to Defendants' Motion on August 22, 2016, (Doc. 76), and September 9, 2016, (Doc.

24   79). To date, Defendants have not filed a reply in support of Defendants' Motion.

25   On December 14, 2016, the undersigned ordered the parties "to file additional briefing,

26   including documentary evidence" regarding certain specific issues. (Doc. 81 at 2.) On December

27   21, 2016, Defendants filed their response to this order in the form of a declaration by Defendant

28

5

1   Hashemi, as well as two attached exhibits.  (Doc. 83.)  Plaintiff then timely filed his response to

2   this order on February 13, 2017.[4]  (Doc. 89.)

3       As such, Defendants' Motion is fully briefed and ready for disposition.

4                    **II.   LEGAL STANDARD**

5       "Federal Rule of Civil Procedure 56 governs motions for summary judgment," *Smith v.*

6   *Union Pac. R.R. Co.*, No. 2:12–cv–00656–TLN–CKD, 2013 WL 5718874, at *2 (E.D. Cal. Oct.

7   16, 2013), and provides, in part, that "[t]he court shall grant summary judgment if the movant

8   shows that there is no genuine dispute as to any material fact and the movant is entitled to

9   judgment as a matter of law," Fed. R. Civ. P. 56(a).   In evaluating a motion for summary

10  judgment, the court "must draw all reasonable inferences supported by the evidence in favor of the

11  non-moving party and then decide whether any genuine issues of material fact exist."  *Guidroz-*

12  *Brault v. Mo. Pac. R.R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001).  "A fact issue is genuine 'if the

13  evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Id.*

14  (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "A material fact is one that

15  may affect the outcome of the case under the applicable law."  *Cotta v. Cty. of Kings*, 79 F. Supp.

16  3d 1148, 1156 (E.D. Cal. 2015) (citing *Liberty Lobby, Inc.*, 477 U.S. at 248).

17      "A party seeking summary judgment bears the initial burden of informing the court of the

18  basis for its motion and of identifying those portions of the pleadings and discovery responses that

19  demonstrate the absence of a genuine issue of material fact."  *Soremekun v. Thrifty Payless, Inc.*,

20  509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see,*

21  *e.g.*, Fed. R. Civ. P. 56(c)(1)(A) (stating that a party seeking summary judgment must support

22  their motion by "citing to particular parts of materials in the record, including depositions,

23  documents, electronically stored information, affidavits or declarations, stipulations (including

24  those made for purposes of the motion only), admissions, interrogatory answers, or other

25  materials").  "The exact nature of this responsibility, however, varies depending on whether the

26  issue on which summary judgment is sought is one in which the movant or the nonmoving party

27  _____

28  [4] By its order entered on January 11, 2017, the undersigned granted an extension for Plaintiff to file his responsive
    briefing to the undersigned's December 14, 2016 order.  (Doc. 88.)

carries the ultimate burden of proof." *Cotta*, 79 F. Supp. 3d at 1157 (citations omitted). "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. However, as in the present situation, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case" on "an issue as to which the nonmoving party will have the burden of proof." *Id.*

"If the moving party meets its initial burden, the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Liberty Lobby, Inc.*, 477 U.S. at 250). Stated differently, "[i]n order to avoid summary judgment, a non-movant must show a genuine issue of material fact by presenting *affirmative evidence* from which a jury could find in its favor." *F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (citing *Liberty Lobby, Inc.*, 477 U.S. at 257). "A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment." *Id.* (citing *Galen v. Cty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007)); *see, e.g.*, *Soremekun*, 509 F.3d at 984 ("Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." (citations omitted)); *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1170 (9th Cir. 1997) ("Once the [moving party] has made a prima facie case for summary judgment, the [non-moving party] cannot rely on general denials; [they] must produce significant probative evidence that demonstrates that there is a genuine issue of material fact for trial." (citing *Liberty Lobby, Inc.*, 477 U.S. at 249–50)).

"In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984. "That remains the province of the jury or fact finder." *Cotta*, 79 F. Supp. 3d at 1157 (citation omitted). "Rather, [the court] draws all inferences in the light most favorable to the nonmoving party." *Soremekun*, 509 F.3d at 984 (citing *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987)). "The evidence presented by the parties must be admissible." *Id.* (citing Fed. R. Civ. P. 56(e)).

Finally, in the context of a motion for summary judgment, "[a] verified complaint may be treated as an affidavit to the extent that the complaint is based on personal knowledge and sets forth facts admissible in evidence and to which the affiant is competent to testify." *Lew v. Kona Hosp.*, 754 F.2d 1420, 1423 (9th Cir. 1985) (citing *Runnels v. Rosendale*, 499 F.2d 733, 734 n.1 (9th Cir. 1974)); *see, e.g.*, *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987) (finding, in the context of a complaint filed by an incarcerated individual, that the "complaint [was] verified" and could "be considered in opposition to summary judgment" because "it [was] based on personal knowledge and set[] forth specific facts admissible in evidence" (citing *Lew*, 754 F.2d at 1423)). A complaint is "verified" if the plaintiff "state[s] under penalty of perjury that the contents [are] true and correct." *Schroeder v. McDonald*, 55 F.3d 454, 460 n.10 (9th Cir. 1995); *cf.* 28 U.S.C. § 1746 (discussing language that may be used to verify unsworn declarations under penalty of perjury).

## III.   DISCUSSION

Defendants request summary judgment on Plaintiff's claims against all three Defendants. (*See, e.g.*, Doc. 73, Ex. 1.)   For the reasons that follow, the undersigned recommends that the presiding district court judge grant Defendants' Motion as to Plaintiff's claims against Defendants Kokor and one of Plaintiff's claims against Defendant Hashemi, but deny the remainder of Defendants' Motion.  (Doc. 73.)

**A.**   **Overview of Analysis**

Plaintiff brings his claims pursuant to 42 U.S.C. § 1983.  "Section 1983 is a codification of § 1 of the Civil Rights Act of 1871," *Kalina v. Fletcher*, 522 U.S. 118, 123 (1997), and provides the following, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  "The text of [Section 1983] purports to create a damages remedy against every state official for the violation of any person's federal constitutional or statutory rights."  *Kalina*, 522 U.S. at 123.  "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

"To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law."  *Long v. Cty. of L.A.*, 442 F.3d 1178, 1185 (9th Cir. 2006) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).  Defendants do not contest that they acted under color of state law during the alleged events.  (*See, e.g.*, Doc. 73, Ex. 1); *cf. West v. Atkins*, 487 U.S. at 54 (stating that "a physician employed by [a state] to provide medical services to state prison inmates . . . act[s] under color of state law for purposes of § 1983 when undertaking [their] duties in treating [a prisoner's] injury").  As such, the second element is satisfied and only the first element of a Section 1983 claim is at issue.

Plaintiff alleges that Defendants violated his rights under the Eighth Amendment to the United States Constitution.  (*See, e.g.*, Doc. 12.)  The Eighth Amendment proscribes, in part, "cruel and unusual punishment."  U.S. Const. Amend. VIII.  In the context of prisons, the Supreme Court noted that "[a]n inmate must rely on prison authorities to treat his medical needs" and "if the authorities fail to do so, those needs will not be met," which "may result" in needless "pain and suffering" that "is inconsistent with contemporary standards of decency."  *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  The Supreme Court therefore held "that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment."  *Id.* at 104 (citation omitted); *see also id.* at 105 ("Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under [Section 1983].").  Thus, "to maintain an Eighth Amendment claim [under Section 1983] based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'"  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle*, 429 U.S. at 104).

1    "In the Ninth Circuit, the test for deliberate indifference consists of two parts," *id.* (citing

2    *McGuckin v. Smith*, 974 F.2d 1050 (9th Cir. 1991), *overruled in part on other grounds by WMX*

3    *Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997)), which include "both an objective standard . .

4    . and a subjective standard," *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (citation

5    omitted).  The undersigned shall address each standard, in turn.

6    **B.       Objective Inquiry**

7         "To meet the objective element of the standard, a plaintiff must demonstrate the existence

8    of a serious medical need."  *Id.* (citing *Estelle*, 429 U.S. at 104).  "Such a need exists if failure to

9    treat the injury or condition 'could result in further significant injury' or cause 'the unnecessary

10   and wanton infliction of pain.'"  *Id.* (quoting *Jett*, 439 F.3d at 1096).  "Indications that a plaintiff

11   has a serious medical need include" the following: (1) "the existence of an injury that a reasonable

12   doctor or patient would find important and worthy of comment or treatment;" (2) "the presence of

13   a medical condition that significantly affects an individual's daily activities;" or (3) "the existence

14   of chronic and substantial pain."  *Id.* (citation omitted); *cf. Jones v. Johnson*, 781 F.2d 769, 771

15   (9th Cir. 1986) (finding that an inmate's complaint "state[d] a serious medical need" where he

16   "allege[d] suffering and pain from his . . . condition and the inability to perform his work at the

17   prison"), *overruled in part on other grounds by Peralta v. Dillard*, 774 F.3d 1076, 1083 (9th Cir.

18   2014).

19        In the present matter, it is uncontested that Plaintiff suffers from end stage liver

20   disease—also known as cirrhosis—as well as complications of this condition, including varices

21   and ascites.  (*See, e.g.*, Doc. 12; Doc. 73, Ex. 1 at 7–8.)  It is further uncontested that this condition

22   has required extensive medical treatment and caused substantial discomfort for Plaintiff.  (*See,*

23   *e.g.*, Doc. 73, Ex. 1 at 6–8.)  Courts have found that end stage liver disease—as well as the

24   discomfort associated with this condition—creates a serious medical need for purposes of an

25   Eighth Amendment deliberate indifference claim.  *See, e.g.*, *Shields v. Cannon*, No. 2:11–cv–3185

26   JAM ACP, 2013 WL 5295681, at *5 (E.D. Cal. Sept. 18, 2013) (finding that the plaintiff

27   "adequately alleged a sufficiently serious medical need" where he alleged that he suffered from

28   "cirrhosis and hepatitis C"), *adopted by* No. 2:11–cv–3185 JAM ACP, 2013 WL 6670469 (E.D.

Cal. Dec. 18, 2013); *Rosado v. Alameida*, 497 F. Supp. 2d 1179, 1187 (S.D. Cal. 2007) (finding that the plaintiff "satisfied the objective component of an Eighth Amendment claim" where "[e]vidence presented by both parties indicate[d] that [the plaintiff] was diagnosed with end stage liver cirrhosis and his condition was serious and potentially life-threatening").  The undersigned agrees with this authority and finds that Plaintiff's end stage liver disease creates the requisite serious medical need to satisfy the objective element of the deliberate indifference test.

Plaintiff's acid reflux disease presents a more complicated issue.  The undersigned has not located any authority from the Ninth Circuit or courts within this district addressing whether acid reflux disease presents a sufficiently serious medical need to satisfy the objective element of the deliberate indifference test.  The undersigned also notes that courts around the country are divided as to whether acid reflux disease satisfies the objective inquiry of this test.  *Compare Bell v. Jendell*, 980 F. Supp. 2d 555, 560 (S.D.N.Y. 2013) (assuming that the plaintiff's allegations "that he suffered five days of acid-reflux symptoms . . . , including" vomiting, "satisfy" the deliberate indifference test's objective prong); *Lane v. Corizon Healthcare*, No. 3:13–CV–519 JD, 2013 WL 5348489, at *2 (N.D. Ind. Sept. 23, 2013) (finding that the plaintiff alleged an adequate serious medical need for purposes of the deliberate indifference test where the plaintiff stated that he had "acid reflux and stomach pain which interfere[d] with his ability to eat"), *with Tennyson v. Raemisch*, 638 F. App'x 685, 689 (10th Cir. 2015) ("GERD—also known as acid reflux—is a common problem and in many instances is not a serious condition warranting Eighth Amendment scrutiny." (citations omitted)); *Watson-El v. Wilson*, No. 08 C 7036, 2010 WL 3732127, at * (N.D. Ill. Sept. 15, 2010) (finding "as a matter of law that the plaintiff's acid reflex [sic] did not rise to the level of a serious medical need for purposes of Eighth Amendment analysis" (citations omitted)); *Fox v. Rodgers*, Civil Action No. 08–CV–14727, at *2 (E.D. Mich. June 8, 2010) (finding "no reasonable trier of fact could find in [the plaintiff's] favor on the objective component of his Eighth Amendment claim" where the plaintiff asserted that he suffered from acid reflux disease), *adopted by* No. 08–cv–14727, 2010 WL 2605832 (E.D. Mich. June 25, 2010).

Despite this conflicting authority, the undersigned finds that acid reflux disease presents a serious medical need that is sufficient to sustain Plaintiff's claims.  As noted previously, in the

Ninth Circuit, a serious medical need "exists if failure to treat the injury or condition could . . . cause the unnecessary and wanton infliction of pain" and an "[i]ndication that a plaintiff has a serious medical need include[s] the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment."  *Colwell*, 763 F.3d at 1066 (citations omitted).  In the instant case, it is uncontested that Plaintiff was diagnosed with acid reflux disease and he sought and received treatment for this ailment, including medication. (*See, e.g.*, Doc. 73, Ex. 1 at 7–8; Doc. 83 ¶¶ 12–13.)   Given the pertinent standard in the Ninth Circuit, the undersigned finds that Plaintiff's diagnosis of acid reflux disease and Plaintiff's actions in seeking and receiving treatment for this condition sufficiently demonstrate that Plaintiff's acid reflux disease creates a serious medical need for purposes of the objective inquiry of the deliberate indifference test. *See, e.g.*, *Colwell*, 763 F.3d at 1066; *cf. Bell v. Santa Ana City Jail*, No. SA CV 07-1218-ODW (PLA), 2010 WL 582543, at *6–8 (C.D. Cal. Feb. 16, 2010) (finding that the plaintiff's "stomach problems"—including acid reflux disease, for which he received treatment "prior to his arrest"—did not present a serious medical need during the pertinent time period while the plaintiff was in jail because, in part, the "plaintiff never suffered from any pain or other symptoms that were sufficiently serious that he sought medical treatment" and the record was devoid of "any competent evidence that [the] plaintiff was diagnosed with an ulcer or other serious stomach condition within the period immediately prior to, during, or shortly after his detention at the [j]ail").

**C.     Subjective Inquiry**

Turning to the second element of the deliberate indifference test, "[a] prison official is deliberately indifferent under [this] subjective element . . . only if the official 'knows of and disregards an excessive risk to inmate health and safety.'"  *Colwell*, 763 F.3d at 1066 (quoting *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004)).  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

"This 'subjective approach' focuses only 'on what a defendant's mental attitude actually was.'"  *Toguchi*, 391 F.3d at 1057 (quoting *Farmer*, 511 U.S. at 839).  "If a [prison official]

should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Id.* (alterations in original) (quoting *Gibson v. Cty. of Washoe, Nev.*, 290 F.3d 1175, 1188 (9th Cir. 2002)).  This standard requires "something more than mere negligence," but "less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835; *see, e.g.*, *id.* (noting that the subjective standard of the deliberate indifference test "requires 'more than ordinary lack of due care for the prisoner's interests or safety'" (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986))); *Toguchi*, 391 F.3d at 1057 ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." (citation omitted)). Ultimately, deliberate indifference is a "heightened" standard, *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 73 (2001), that is "substantially more difficult to establish than negligence . . . and has been associated with affirmatively culpable conduct," *Pickard v. Holton*, Case No. 12–cv–01489–JST, 2013 WL 5195616, at *4 (N.D. Cal. Sept. 16, 2013) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

    To satisfy this subjective standard, the plaintiff must show (1) "a purposeful act or failure to respond to a prisoner's pain or possible medical need," and (2) "harm caused by the indifference." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)).  As to the first prong, "deliberate indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.'" *Wilhelm*, 680 F.3d at 1122 (quoting *Jett*, 439 F.3d at 1096).  "Yet, an 'inadvertent [or negligent] failure to provide adequate medical care' alone does not state a claim under § 1983." *Jett*, 439 F.3d at 1096 (alteration in original) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997)).

    "In deciding whether there has been deliberate indifference to an inmate's serious medical needs, [courts] need not defer to the judgment of prison doctors or administrators." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989)).  However, "a plaintiff's showing of nothing more than a difference of medical

13

opinion as to the need to pursue one course of treatment over another [is] insufficient, as a matter of law, to establish deliberate indifference." *Wilhelm*, 680 F.3d at 1122 (alteration in original) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

Regarding the second prong of the subjective standard, "[a] prisoner need not show his harm was substantial." *Id.* (alteration in original) (quoting *Jett*, 439 F.3d at 1096). "[H]owever, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." *Jett*, 439 F.3d at 1096 (citation omitted). "If the harm is an 'isolated exception' to the defendant's 'overall treatment of the prisoner [it] ordinarily militates against a finding of deliberate indifference.'" *Id.* (alteration in original) (quoting *McGuckin*, 974 F.2d at 1060).

Plaintiff alleges that each Defendant was deliberately indifferent in their treatment of Plaintiff's conditions. (*See* Doc. 12.) The undersigned shall address Plaintiff's claims against each Defendant.

        1.      Defendant Kokor

In the Complaint, Plaintiff alleges that Defendant Kokor was deliberately indifferent by refusing Plaintiff's requests to go to a hospital for a follow-up appointment with an outside doctor, Dr. Krishan. (*See* Doc. 12 at 4–5.) Defendants argue, in pertinent part, that summary judgment is warranted as to this claim because Defendant Kokor was not "aware" of "the late appointments" until December 10, 2012. (Doc. 73, Ex. 1 at 12.) The undersigned agrees with Defendants' position.

When Plaintiff was discharged from Mercy Hospital on October 30, 2012, Mercy Hospital recommended a follow-up visit with Dr. Krishan in two weeks and another "diagnostic EGD in four to six weeks." (Doc. 73, Ex. 3 ¶ 41; *see also* Doc. 89 at 87 (providing an "inmate discharge summary" from Mercy Hospital, which provides that Plaintiff "will follow [sic] with Krishan in 2 weeks").) It is uncontested that this follow-up visit was roughly six weeks late and the "EGD was days late." (Doc. 73, Ex. 1 at 12.) However, Defendants have presented uncontroverted evidence that Defendant Kokor was not aware of this delay because he was not involved in Plaintiff's

1  treatment between October 28, 2012 and December 9, 2012.[5]  (*See* Doc. 79 at 26.)  Further, once

2  Defendant Kokor received notice of this delay on December 10, 2012, he "submitted a written

3  request for the prison to schedule the visit with Dr. Krishan," which resulted in the follow-up visit

4  occurring on December 28, 2012.  (*Id.*; *see also* Doc. 89 at 82–83 (providing forms dated

5  December 10, 2012 requesting that Plaintiff be sent for a visit with Dr. Krishan).)

6        This evidence demonstrates that Defendant Kokor was not aware of any delay in Plaintiff's

7  follow-up visit with Dr. Krishan until December 10, 2012, at which time he placed a request for

8  this visit.  Absent any knowledge of the delay in treatment, Defendant Kokor could not have

9  purposely prevented Plaintiff from receiving this follow-up visit.  *See, e.g.*, *Farmer v. Brennan*,

10  511 U.S. 825, 837 (1994) (stating that, to "be found liable under the Eighth Amendment for

11  denying an inmate humane conditions of confinement," an "official must both be aware of facts

12  from which the inference could be drawn that a substantial risk of serious harm exists, and he must

13  also draw the inference"); *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) ("If a [prison

14  official] should have been aware of the risk, but was not, then the [official] has not violated the

15  Eighth Amendment, no matter how severe the risk." (alterations in original) (quoting *Gibson v.

16  Cty. of Washoe, Nev.*, 290 F.3d 1175, 1188 (9th Cir. 2002))).  Consequently, Plaintiff's claim

17  against Defendant Kokor fails and summary judgment is warranted on this claim.

18        Accordingly, the undersigned RECOMMENDS that the presiding district court judge

19  GRANT Defendants' Motion, (Doc. 73), as to Plaintiff's claim against Defendant Kokor.

20        2.      <u>Defendant Tiggs-Brown</u>

21        Defendants next request summary judgment on Plaintiff's claim against Defendant Tiggs-

22  Brown, (*see* Doc. 73, Ex. 1 at 10–11), in which Plaintiff alleges that this Defendant was

23  deliberately indifferent by declining to renew Plaintiff's subscription for Prilosec—or prescribe an

24  equivalent medication—because she did not want to make this request to the MAR committee,

25  (*see* Doc. 12 at 5 & 9).  The undersigned finds that summary judgment is not warranted as to this

26  claim.

27

28  _____

[5] Plaintiff notes that he submitted a series of Health Care Services Request Forms between October 28, 2012 and December 9, 2012, in which he requests to receive his follow-up visit with Dr. Krishan.  (*See, e.g.*, Doc. 89 at 25–27.) However, Plaintiff fails to direct the undersigned to any evidence that Defendant Kokor was aware of these requests.

1       As to the first requirement of the subjective test for deliberate indifference—a purposeful

2   act or failure to respond to a prisoner's pain or possible medical need—Plaintiff alleges in his

3   verified Complaint (and Defendants do not contest) that he informed Defendant Tiggs-Brown that

4   (1) Plaintiff needed Prilosec to treat the symptoms of his acid reflux disease, and (2) Plaintiff

5   would experience some measure of pain and suffering without this medication.[6]  (*See, e.g.*, Doc. at

6   9.)  *See generally Lew v. Kona Hosp.*, 754 F.2d 1420, 1423 (9th Cir. 1985) ("A verified complaint

7   may be treated as an affidavit to the extent that the complaint is based on personal knowledge and

8   sets forth facts admissible in evidence and to which the affiant is competent to testify." (citing

9   *Runnels v. Rosendale*, 499 F.2d 733, 734 n.1 (9th Cir. 1974))).

10      Defendants nonetheless argue that this subjective requirement is not satisfied here because

11  Defendant Tiggs-Brown made a medical decision not to refill this prescription.  (*See* Doc. 73, Ex.

12  1 at 10–11.)  The undersigned disagrees.  The Supreme Court has noted that the question of

13  whether a particular "form[] of treatment" is warranted "is a classic example of a matter for

14  medical judgment."  *Estelle v. Gamble*, 429 U.S. 97, 107 (9th Cir. 1976).  "A medical decision not

15  to order" a particular "measure[] . . . does not represent cruel and unusual punishment."  *Id.*

16  Instead, "[a]t most it is medical malpractice."  *Id.*  However, this deference to medical judgments

17  is not absolute.  In particular, the Ninth Circuit has noted that "[d]eliberate indifference may be

18  found where prison officials fail to provide an inmate with medical care for reasons unrelated to

19  the medical needs of the prisoner, such as administrative concerns."  *Oliver v. Carey*, 315 F.

20  App'x 649, 650 (9th Cir. 2009) (citing *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)); *see,*

21  *e.g.*, *Jett*, 439 F.3d at 1097 (finding that there were genuine issues of material fact on a deliberate

22  indifference claim where evidence indicated that a physician "decided not to request an orthopedic

23  consultation merely because" administrative concerns prevented the plaintiff from returning to a

24  particular hospital "for a follow-up visit").  Indeed, where a physician decides against a needed

---

[6] In their summary judgment briefing, Defendants insinuate that Defendant Tiggs-Brown did not refill Plaintiff's prescription for Prilosec because Plaintiff failed to submit "medical service forms about Prilosec."  (Doc. 73, Ex. 1 at 11); *cf. Williams v. Bennett*, 689 F.2d 1370, 1384 (11th Cir. 1982) ("There can be no duty, the breach of which is actionable, to do that which is beyond the power, authority, or means of the charged party. . . . Those whose callous indifference results in liability are those under a duty-possessed of authority and means-to prevent the injury."). However, Defendants subsequently clarified that Defendant Tiggs-Brown held the authority to "issue or refill prescriptions if she deems them medically necessary." (Doc. 83 ¶ 15.)

medical treatment due to administrative concerns, "this is 'akin to cases finding deliberate indifference where prison officials and doctors deliberately ignore[] the express orders of a prisoner's prior physician for reasons unrelated to the medical needs of the prisoner.'" *Jett*, 439 F.3d at 1097 (alteration in original) (quoting *Hamilton v. Endell*, 981 F.2d 1062, 1066–67 (9th Cir. 1992), *abrogated in part on other grounds by Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1045 (9th Cir. 2002)).

In this case, Plaintiff does not argue that Defendant Tiggs-Brown made a medical judgment against refilling Plaintiff's prescription for Prilosec.  Instead, in his operative, verified Complaint—which is appropriate evidence at the present posture of the case, *see, e.g.*, *Lew*, 754 F.2d at 1423—Plaintiff alleges that he conveyed his need for Prilosec to Defendant Tiggs-Brown, but this Defendant stated that "she would not refill the medication because she did not want to go to the MAR comitty [sic]."  (Doc. 12 at 5.)  As such, Plaintiff alleges that Defendant Tiggs-Brown delayed or denied this medication due to administrative or personal reasons that were unrelated to Plaintiff's medical needs.  (*See id.*)  This evidence excludes this claim from the ambit of medical judgment and creates a genuine issue of material fact as to whether Defendant Tiggs-Brown purposefully failed to respond to Plaintiff's pain or possible medical need for an impermissible reason, such as administrative concerns.[7]  *See, e.g.*, *Jett*, 439 F.3d at 1097.

Based on this record, the undersigned finds that there is a genuine issue of material fact as to whether Defendant Tiggs-Brown purposefully failed to respond to Plaintiff's pain or possible medical need.  As such, summary judgment is inappropriate under the first requirement of the subjective standard.

The record also reflects that summary judgment is inappropriate as to the second requirement of this standard—harm caused by the indifference.  The present record reflects that

---

[7] In their briefing, Defendants argue that Plaintiff's assertion regarding Defendant Tiggs-Brown "want[ing] to avoid the effort of going to a MAR committee" has no merit because this Defendant "did go to a MAR committee on behalf of Plaintiff."  (Doc. 73, Ex. 1 at 11.)  However, Defendant Tiggs-Brown went to the MAR committee regarding a different treatment and *not* the Prilosec that is the subject of Plaintiff's claim.  (*See* Doc. 73, Ex. 5 ¶ 13 (providing Defendant Tiggs-Brown's declaration, in which she states that she "went before the MAR committee to renew Plaintiff's morphine prescription after his visit with [Defendant Tiggs-Brown] on July 9, 2012").)  Regardless, to the extent there is conflicting evidence as to whether Defendant Tiggs-Brown chose not to refill the Prilosec prescription due to a desire to avoid the MAR committee, the weighing of this evidence is properly reserved for the trier of fact.

Plaintiff went without Prilosec for roughly seven days between July 28, 2012 and August 3, 2012 because Defendant Tiggs-Brown declined to refill this prescription.   (Doc. 73, Ex. 5 ¶ 15.) Plaintiff also provided a sworn declaration in which he states that Defendant Tiggs-Brown's actions resulted in him suffering from the symptoms of acid reflux disease for some period of time.   (*See* Doc. 76 at 6.)   As noted previously, the requisite harm does not have to be substantial to satisfy this second requirement.   *See, e.g.*, *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (noting that "[a] prisoner need not show his harm was substantial" under the subjective standard); *cf. Hallett v. Morgan*, 296 F.3d 732, 746 (9th Cir. 2002) (finding that the plaintiffs "could not prove an Eighth Amendment violation because they [did] not demonstrate[] that delays occurred to patients with problems so severe that delays would cause significant harm and that Defendants should have known this to be the case").   As such, the undersigned finds that there are genuine issues of material fact regarding whether Plaintiff suffered the requisite harm to satisfy the second requirement of the subjective test.

In summary, the undersigned finds that there are genuine issues of material fact as to whether the subjective test of the deliberate indifference analysis is satisfied in this case.   The undersigned therefore RECOMMENDS that the presiding district court judge DENY Defendants' Motion, (Doc. 73), to the extent Defendants request summary judgment on Plaintiff's claim against Defendant Tiggs-Brown.

3.   Defendant Hashemi

Defendants also requests summary judgment on Plaintiff's claims against Defendant Hashemi, (*see* Doc. 73, Ex. 1 at 8–11), in which Plaintiff alleges that this Defendant was deliberately indifferent by (1) refusing to send Plaintiff to a hospital for medical treatment on October 26, 2012, and (2) refusing Plaintiff's requests to go to the hospital for the follow-up appointment with Dr. Krishan following Plaintiff's discharge on October 30, 2012,[8] (*see* Doc. 12

---

[8] In his Complaint, Plaintiff also alleges that Defendant Hashemi was deliberately indifferent by "refus[ing] to renew [Plaintiff's] Prilosec." (Doc. 12 at 10.)  However, in his opposition to Defendants' Motion, Plaintiff asserts that he does not raise this claim. (*See* Doc. 76 at 13 ("Plaintiff does not accuse Dr. Hashemi . . . for not providing the Prilosec.").)  As such, the undersigned finds that this claim has been withdrawn.

Nonetheless, even if it is not withdrawn, this claim does not survive summary judgment.  Unlike Plaintiff's claim against Defendant Tiggs-Brown, Plaintiff offers no alternative rationale for why Defendant Hashemi

1   at 10–12).   For the reasons that follow, the undersigned finds that Defendants are entitled to

2   summary judgment on only the first claim.

3         As to Plaintiff's first claim against Defendant Hashemi, Plaintiff has offered no evidence

4   of any non-medical reason this Defendant declined to send Plaintiff to a hospital on October 26,

5   2012.[9]   (*See, e.g.*, Doc. 12 at 10–12.)   Instead, Plaintiff only alleges that he disagrees with this

6   Defendant's "refus[al] to send . . . Plaintiff out to a hospital." (*Id.* at 10; *see also* Doc. 76 at 20

7   (providing Plaintiff's argument that Defendant "Hashemi and . . . Plaintiff had a disagreement

8   over [Plaintiff's] medical treatment").)   However, as noted by the Supreme Court, "the question

9   whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic

10   example of a matter for medical judgment." *Estelle v. Gamble*, 429 U.S. 97, 107 (1976).   As such,

11   "[a] medical decision not to order" a particular form of treatment "does not represent cruel and

12   unusual punishment" and, instead, is medical malpractice "[a]t most." *Id.* As Plaintiff alleges

13   only a disagreement with Defendant Hashemi's medical judgment on October 26, 2012, this claim

14   fails. *See, e.g.*, *Colwell v. Bannister*, 763 F.3d 1060, 1068 (9th Cir. 2014) ("A difference of

---

17   purportedly declined to renew Plaintiff's Prilosec prescription. (*See* Doc. 12 at 10–12.) Instead, Plaintiff alleges only that Defendant Hashemi declined to renew this prescription. (*See, e.g., id.*)

18       As Plaintiff fails to offer evidence regarding any other motive, Plaintiff's claim amounts only to a disagreement with Defendant Hashemi's medical judgment as to the Prilosec prescription. However, this type of allegation does not demonstrate deliberate indifference. *See, e.g., Colwell v. Bannister*, 763 F.3d 1060, 1068 (9th Cir. 2014) ("A difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." (citation omitted)); *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) ("[W]here a defendant has based his actions on a medical judgment that either of two alternative courses of treatment would be medically acceptable under the circumstances, plaintiff has failed to show deliberate indifference, as a matter of law." (citing *Estelle v. Gamble*, 429 U.S. 97, 107–08 (1976))). This claim therefore fails.

22       Accordingly, the undersigned RECOMMENDS that the presiding district court judge GRANT Defendants' Motion, (Doc. 73), insofar as Defendants request summary judgment on Plaintiff's claim against Defendant Hashemi—to the extent it still survives—based on this Defendant's decision not to renew Plaintiff's Prilosec prescription.

24   [9] In his unsworn opposition to Defendants' Motion, Plaintiff argues that Defendant Hashemi declined to send Plaintiff to a hospital on October 26, 2012 as a "retaliat[ion]" for Plaintiff arguing with this Defendant. (Doc. 76 at 12; *see also id.* at 20 (providing Plaintiff's argument that Defendant "Hashemi and . . . Plaintiff had a disagreement over [Plaintiff's] medical treatment," which "caused [Defendant] Hashemi to get up set [sic] and refuse to send Plaintiff to the hospital for treatment").) However, Plaintiff did not make this statement in the verified complaint, (*see* Doc. 12), or a sworn affidavit, or otherwise present evidence supporting this assertion. As such, this allegation in Plaintiff's unsworn opposition briefing does not constitute sufficient evidence to survive summary judgment. *See, e.g., F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) ("A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment." (citing *Galen v. Cty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007))).

1 opinion between a physician and the prisoner—or between medical professionals—concerning

2 what medical care is appropriate does not amount to deliberate indifference." (citation omitted)).

3      Plaintiff's second claim against Defendant Hashemi relating to Plaintiff's follow-up visit

4 with Dr. Krishan presents a different situation.  As to the first requirement of the subjective

5 standard—a purposeful act or failure to respond to a prisoner's pain or possible medical need—the

6 record reflects that Plaintiff notified Defendant Hashemi regarding the recommended follow-up

7 visit and the "danger" of Plaintiff's "pain and suffering" on November 2, 2012,[10] (Doc. 12 at 12),

8 but Defendant Hashemi nonetheless declined to file a request for this follow-up visit, (*see, e.g.*,

9 Doc. 76 at 6).    The record further reflects that Defendant Hashemi had the authority to submit a

10 written request to initiate the process for Plaintiff to gain approval to see Dr. Krishan for the

11 follow-up treatment.[11]   (*See* Doc. 83 ¶ 5.)

12      As previously noted, Defendant Hashemi was deliberately indifferent if he "delay[ed] or

13 intentionally interfere[d] with" Plaintiff's "medical treatment" with Dr. Krishan.  *Wilhelm v.*

14 *Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (citation omitted).  However, there remain genuine

15 issues of material fact as to whether Defendant Hashemi's actions actually delayed or interfered

16 with Plaintiff's treatment with this other physician.  In particular, the record reflects that Plaintiff

17 visited with Defendant Hashemi on November 2, 2012, but that this Defendant "had no further

18 involvement or control with Plaintiff's condition or treatment" after that date.  (Doc. 73, Ex. 4 ¶

19 16.)  This last date of treatment was only three days after Plaintiff's discharge on October 30,

20 2012, and the discharge notes from Mercy Hospital indicate that Plaintiff should have a follow-up

21 _____

22 [10] In the Complaint, Plaintiff also alleges that Defendant Hashemi was "put on notice" regarding the follow-up visit with Dr. Krishan by Plaintiff's "sick call slips."  (*See* Doc. 12 at 12; *see also* Doc. 89 at 25–27 (constituting Health

23 Care Services Request Forms for Plaintiff dated between October 28, 2012 and December 9, 2012).)  However, as with Defendant Kokor, there is no indication in the record that Defendant Hashemi was aware of these Health Care Services Request Forms.

24 [11] In his declaration in support of Defendants' Motion, Defendant Hashemi notes that he "is not in charge of scheduling medical visits for inmates" and, instead, he "makes recommendations for visits and treatment."  (Doc. 73,

25 Ex. 4 ¶ 19.)  Defendant Hashemi also notes that "the actual process of scheduling is done by the separate Utilization Management department."  (*Id.*)  In a separate filing, Defendant Hashemi further states that he was not "involved in

26 scheduling or approving" Plaintiff's follow-up visit with Dr. Krishan and "[t]hat would have been done by the intake staff" or a different physician "who saw Plaintiff upon his return from Mercy Hospital."  (Doc. 83 ¶ 8.)

27      However, Defendant Hashemi subsequently clarified that he held the authority to request that "an inmate" see a "private, non-CDCR medical professional[] or outside hospital[] or clinic[]" by "submitting a Physician's

28 Request for Services (CDCR Form 7243)."  (*Id.* ¶ 5.)

1   visit with Dr. Krishan *two weeks after* this discharge.  (*See* Doc. 89 at 87 (providing Plaintiff's

2   "inmate discharge summary" from Mercy Hospital).)  As such, viewing the evidence in the light

3   most favorable to the nonmoving party, *see, e.g.*, *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978,

4   984 (9th Cir. 2007) (citation omitted), it is not clear based on this record whether Defendant

5   Hashemi's action in declining to issue a request for Plaintiff's follow-up treatment ultimately

6   resulted in the subsequent delay of this treatment, or otherwise constituted intentional interference

7   with Plaintiff's treatment with Dr. Krishan, (*cf.* Doc. 73, Ex. 6 ¶¶ 17–18 (providing the declaration

8   of Defendant Kokor where this physician notes that he "submitted a written request for the prison

9   to schedule" a visit for Plaintiff "with Dr. Krishan" on December 10, 2012, which ultimately

10  resulted in Plaintiff being taken "for the follow-up visit" over two weeks later on December 28,

11  2012)).  These issues are properly reserved for the trier of fact.[12]

12          Summary judgment is also not warranted under the second requirement of the subjective

13  standard—harm caused by the indifference.  Plaintiff submitted a declaration where he states that

14  he suffered from the complications of his end stage liver disease due to the delay in his treatment

15  with Dr. Krishan.  (*See, e.g.*, Doc. 76 at 6.)  This showing is sufficient to create genuine issues of

16  material fact as to whether Plaintiff was harmed by Defendant Hashemi's alleged indifference in

17  failing to request the follow-up visit with Dr. Krishan.  *See, e.g.*, *Jett v. Penner*, 439 F.3d 1091,

18  1096 (9th Cir. 2006) (noting that "[a] prisoner need not show his harm was substantial" under the

19  subjective standard); *cf. Hallett v. Morgan*, 296 F.3d 732, 746 (9th Cir. 2002) (finding that the

20  plaintiffs "could not prove an Eighth Amendment violation because they [did] not demonstrate[]

21  that delays occurred to patients with problems so severe that delays would cause significant harm

22  and that Defendants should have known this to be the case").

23

24

---

25  [12] The undersigned notes that the record is also deficient insofar as it is not clear *why* Defendant Hashemi declined to request the follow-up treatment.  (*See, e.g.*, Doc. 73, Ex. 4 ¶ 16 (providing Defendant Hashemi's declaration, in which

26  he discusses his treatment of Plaintiff on November 2, 2012)); *cf. Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) ("'An *inadvertent* failure to provide adequate medical care' does not, by itself, state a deliberate indifference

27  claim for § 1983 purposes." (alterations in original) (citation omitted)); *Hamilton v. Endelli*, 981 F.2d 1062, 1066 (9th Cir. 1992) (finding that summary judgment was not appropriate "where prison officials and doctors deliberately

28  ignored the express orders of a prisoner's prior physician for reasons unrelated to the medical needs of the prisoner"), *overruled on other grounds as recognized by Colwell v. Bannister*, 763 F.3d 1060, 1069 (9th Cir. 2014).

Based on the foregoing, the undersigned RECOMMENDS that the presiding district court judge GRANT Defendants' Motion, (Doc. 73), as to Plaintiff's claim against Defendant Hashemi relating to Plaintiff's visit with this Defendant on October 26, 2012.  The undersigned further RECOMMENDS that the district court judge DENY Defendants' Motion, (Doc. 73), as to Plaintiff's claim against Defendant Hashemi relating to Plaintiff's visit with this Defendant on November 2, 2012.

### IV.    CONCLUSION

For the reasons provided herein, the undersigned RECOMMENDS that the presiding district court judge GRANT IN PART and DENY IN PART Defendants' Motion.  (Doc. 73.) Specifically, the undersigned RECOMMENDS that the district court judge GRANT Defendants' Motion, (Doc. 73), as to (1) Plaintiff's claims against Defendants Kokor; and (2) Plaintiff's claim against Defendant Hashemi relating to Plaintiff's visit with this Defendant on October 26, 2012. The undersigned further RECOMMENDS that the district court judge DENY Defendants' Motion, (Doc. 73), as to Plaintiff's remaining claims against Defendants Tiggs-Brown and Hashemi.

These Findings and Recommendations shall be submitted to the United States District Court Judge assigned to this case pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within twenty-one (21) days after being served with these Findings and Recommendations, the parties may file written objections with the Court.  Local Rule 304(b).  Any written objections to these findings and recommendations should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **March 2, 2017**                                   /s/ *Sheila K. Oberto*
                                                                        UNITED STATES MAGISTRATE JUDGE

22