1

2

3

4

5

6                        **UNITED STATES DISTRICT COURT**

7                        **EASTERN DISTRICT OF CALIFORNIA**

8

9    **ARTHUR T. BUSSIERE**                    **CASE NO. 1:13-CV-1565 AWI SKO (PC)**

10                      **Plaintiff**

11                        **v.**                      **ORDER ON FINDINGS AND
                                               RECOMMENDATION REGARDING**
12   **DR. W. KOKOR, et al.,**                  **DEFENDANTS' MOTION FOR
                                               SUMMARY JUDGMENT**
13                     **Defendants**
                                               (Doc. Nos. 73, 90)
14

15

16          On July 29, 2016, Defendants filed a Motion for Summary Judgment ("Defendants'

17   Motion"). <u>See</u> Doc. No. 73. On March 2, 2017, the Magistrate Judge issued a findings and

18   recommendations (the "F&R") in which she recommended that the Court: (1) grant Defendants'

19   Motion as to "Plaintiff's claims against Defendant Kokor" and "Plaintiff's claim against

20   Defendant Hashemi relating to Plaintiff's visit with this Defendant on October 26, 2012;" and (2)

21   deny Defendants' Motion "as to Plaintiff's remaining claims against Defendants Tiggs-Brown and

22   Hashemi." <u>See</u> Doc. No. 90.

23          The F&R was served upon the parties and contained notice that any objections were to be

24   filed within twenty-one days after service. <u>See id.</u> Plaintiff filed objections to the F&R on March

25   20, 2017, <u>see</u> Doc. No. 92, and Defendants filed objections to the F&R on March 27, 2017, <u>see</u>

26   Doc. No. 93.

27          In accordance with the provisions of 28 U.S.C. § 636(b)(1)(C), this Court has conducted a

28   *de novo* review of the case.

*Plaintiff's Objections*

Plaintiff's objections are brief.  Plaintiff states that he has no opposition to the F&R's conclusions with respect to Dr. Kokor, he requests that the court review the incident with Dr. Hashemi that occurred on October 26, 2012, and he requests a case settlement hearing and trial date with respect to the remaining claims.  See Doc. No. 92.

The Court has reviewed the F&R's analysis of Plaintiff's interactions with Dr. Hashemi on October 26.  On that day, Dr. Hashemi declined to send Plaintiff to the hospital, but instead examined Plaintiff, found no tenderness or distension, ordered Plaintiff to continue his medications, and ordered Plaintiff follow up in 10-25 days.  The Court agrees with the F&R that the dispute appears to be a mere disagreement over Dr. Hashemi's medical judgment, and thus, is not a basis for an Eighth Amendment claim.  See Estelle v. Gamble, 429 U.S. 97, 107 (1976); Colwell v. Bannister, 763 F.3d 1060, 1068 (9th Cir. 2014); see also Hashemi Dec. ¶¶ 12, 15. While Plaintiff's opposition appears to rely on procedures that were performed during his hospitalization,[1] at best this evidence might suggest that Dr. Hashemi's chosen course of treatment was negligent.  Neither negligence nor gross negligence will support an Eighth Amendment medical mistreatment claim.  See Lemire v. California Dept. of Corr. & Rehab., 726 F.3d 1062, 1082 (9th Cir. 2013).   Plaintiff's objection is overruled.

*Defendant's Objections – Tiggs-Brown*

Defendant Tiggs-Brown objects that summary judgment should be granted in her favor.[2] Tiggs-Brown contends that because the undisputed evidence shows that she has gone before the Medical Authorization Review Committee ("MARC") on Plaintiff's behalf, and because MARC approval is not required for Prilosec renewal, summary judgment should be granted.  The Court disagrees.  As explained by the F&R, while Tiggs-Brown did go before the MARC on Plaintiff's behalf, that was in connection with a separate and unrelated prescription that occurred two weeks

---

[1] Plaintiff notes that 3 liters of liquid were drained from his abdomen during his hospitalization.  However, without contradiction, Dr. Hashemi testified that "ascites," which is an accumulation of liquid in the abdomen and a common side effect of cirrhosis, can accumulate slowly over a long period of time or rapidly over a short period of time.  See Hashemi Dec. ¶ 5.

[2] Plaintiff claims that Tiggs-Brown unlawfully refused to refill Plaintiff's Prilosec because she did not want to have to go before the Medical Authorization Review committee in order to obtain the medication.

1   prior to Plaintiff's request for Prilosec.  See Doc. No. 90 at 17 n.7; Doc. No. 73-5 at ¶¶ 8, 10, 13.

2   Further, Plaintiff stated in his verified complaint that Tiggs-Brown told Plaintiff that she would

3   not refill the Prilosec because she did not want to go before the MARC.  See Doc. No. 12 at 5.

4   Tiggs-Brown's objection is overruled.

5        *Defendants' Objections – Dr. Hashemi*

6        Dr. Hashemi objects that summary judgment should be granted as to the remaining claim

7   against her.  The remaining claim is based on Dr. Hashemi's failure to schedule a follow up

8   appointment for Plaintiff with Dr. Krishan of Mercy Hospital.  After review, the Court agrees that

9   summary judgment in favor of Dr. Hashemi is appropriate.

10        a.    Relevant Facts & Evidence

11        As discussed by the F&R, Plaintiff suffers from end stage liver disease, a.k.a. cirrhosis.

12   On October 27, 2012, Plaintiff saw Dr. Kokor and complained that his stomach was distended and

13   that he had been vomiting all day.  Dr. Kokor referred Plaintiff to Mercy Hospital (an outside

14   hospital) for further evaluation and to check for abdominal bleeding.  At Mercy Hospital, Dr.

15   Krishan performed an abdominal paracentesis and an esophagogastroduodenoscopy ("EGD").  Dr.

16   Krishan found varices[3] in Plaintiff's esophagus.  Dr. Krishan developed a plan in which Plaintiff

17   was to have another EGD in four to six weeks.

18        On October 30, 2012, Plaintiff was discharged from Mercy Hospital.  The physician's

19   discharge instructions included a "suggestion for follow-up" for Plaintiff to have a follow up visit

20   with Dr. Krishan in two weeks.  Plaintiff's inmate discharge summary stated that Plaintiff was to

21   "continue his medications as before and he will follow [sic] with [Dr.] Krishan in 2 weeks."

22   Plaintiff returned to prison that day. Plaintiff was taken to the prison Treatment Triage Area where

23   he received an intake evaluation, including a review of the medical records from Mercy Hospital.

24        On October 31, Plaintiff was examined by Dr. Jackson.

25        On November 2, 2012, Plaintiff saw Dr. Hashemi, after complaints of nausea and

26   vomiting.  Dr. Hashemi transferred Plaintiff to the triage department and to another physician.  Dr.

27   Hashemi did not submit a Form 7221 doctor's request for services regarding the two-week follow

28   

---

[3] "Varices" are dilated mucosal veins in the esophagus.  See Hashemi Dec. ¶ 4.

1  up with Dr. Krishan.  After November 2, Dr. Hashemi had no further involvement with or control

2  of Plaintiff's condition or treatment.

3        Plaintiff did not have a follow up visit with Dr. Krishan within two weeks of discharge.

4  After November 2, 2012, Plaintiff submitted "medical slips"/Health Care Services Request Forms

5  on November 12, 18, and 30, 2012, in which he stated that he had not seen Dr. Krishan for the

6  follow up.[4]  See Hashemi Supp. Dec. Ex. B at pp. 6, 7, 8.

7        On December 10, 2012, Dr. Kokor was notified of Plaintiff's overdue follow up

8  appointment with Dr. Krishan.  Dr. Kokor examined Plaintiff and immediately submitted a written

9  request for the prison to schedule an appointment with Dr. Krishan.

10       On December 28, 2012, Plaintiff saw Dr. Krishan for the "two-week" follow up visit, and

11  also had the second EGD.

12       Dr. Hashemi submitted two declarations in connection with the summary judgment

13  motion.  In her first declaration, Dr. Hashemi stated in relevant part:  "On November 2, 2012, I

14  examined and treated Plaintiff.  He complained about several medical issues, including cirrhosis,

15  varices, and nausea.  I noted his pre-existing medical issues, but found no acute medical issues.

16  Still, based on his complaints, I consulted with Dr. Nyenke.  We decided to send Plaintiff to the

17  prison's Treatment Triage Area ("TTA") for 24 hours of observation of his condition.  In the TTA,

18  Dr. Chang took over treatment, and noted no acute issues."  Hashemi Dec. ¶ 16.  Dr. Hashemi also

19  explained:  "As a medical doctor, I am not in charge of scheduling medical visits for inmates.  I

20  make recommendations for visits and treatment.  But the actual process of scheduling is done by

21  the separate Utilization Management ("UM") Department."  Id. at ¶ 19.

22       In her second declaration,[5] Dr. Hashemi explained that, generally, "medical appointments

23  for inmates are scheduled by the prison's [UM] staff.  The UM is a separate department that

24  reviews, approves, and schedules medical appointments.  It does not include the actual primary

25  care providers."  Supp. Hashemi Dec. ¶ 3.  When CDCR medical staff wish to send an inmate to a

---

26

27  [4] The Court notes that, as the F&R correctly found, there is no evidence that Dr. Hashemi saw any of Plaintiff's medical slips that mentioned the follow up appointment with Dr. Krishan.

28  [5] The second declaration was submitted pursuant to an order from the Magistrate Judge for additional briefing.  See Doc. No. 81.

1   non-CDCR medical provider, the request is made by submitting a Physician's Request for

2   Services.  See id. at ¶ 5.  Dr. Hashemi declared that when Plaintiff returned from Mercy Hospital,

3   he was taken to the TTA, where he received an intake evaluation, including a review of his

4   medical records from Mercy.  See id. at ¶ 7.  Staff scheduled Plaintiff for a follow up exam with a

5   staff doctor for October 31, and Plaintiff was examined by Dr. Jackson on that date.  See id.  Dr.

6   Hashemi further declared: "I understand that Plaintiff alleges that he should have had a two week

7   appointment with Dr. Krishan from Mercy Hospital, and that the appointment was delayed by

8   about six weeks.  I was not involved in scheduling or approving the visit.  That would have been

9   done by the intake staff at the TTA, or by Dr. Jackson, who saw Plaintiff upon his return from

10  Mercy Hospital.  As I was not involved, nor were the other Defendants, I can only speculate that

11  the staff deemed the follow-up was not medically necessary in light of the visits and evaluations of

12  CDCR doctors, or that the visit was not timely scheduled by UM.  Still, Plaintiff received follow-

13  up EGD procedure as requested by Mercy Hospital on December 28, 2012.  Further, Plaintiff had

14  ten medical visits during this period regardless."  Id. at ¶ 9.

15      Dr. Hashemi's supplemental declaration is consistent with her verified responses to

16  Plaintiff's second set of interrogatories.  See Magana v. Northern Mariana Islands, 107 F.3d 1436,

17  1447 (9th Cir. 1997) (noting that courts deciding motions for summary judgment must consider

18  "[d]epositions, answers to interrogatories, admissions on file and affidavits . . . .").  Dr. Hashemi

19  responded that she does not arrange follow up visits, rather the office technicians arrange for

20  follow up visits, and she did not refuse Plaintiff's follow up visit with Dr. Krishan.  See Response

21  to Interrogatory 21 (second set).[6]  When asked whether it was true that the yard primary care

22  physician has the duty to notify UM staff to set up a follow up appointment, Dr. Hashemi

23  responded that follow-up visits are usually generated automatically when the patient is discharged

24  from the hospital, and that she did not see Plaintiff when he was discharged from the hospital;

25  rather, she saw Plaintiff on November 2 for complaints regarding nausea and vomiting, not the

26  hospital discharge.  See Response to Interrogatory 22 (second set).  Further, in response to an

27

28  ─────────────────
    [6] Dr. Hashemi's verified interrogatory responses are part of Plaintiff's September 9, 2016 supplemental briefing.  See Doc. No. 79 at pp. 12-22.

interrogatory that stated that it was her job to submit a follow up visit form to the UM, and asked why she failed in carrying out her duty fill out the proper form, Dr. Hashemi responded that she did not fail any duty, that Plaintiff returned from the hospital on October 30, and she did not see him for that "medical return encounter."  See Response to Interrogatory 23 (second set).  Finally, Interrogatory 25 was based on a response to a first set of interrogatories in which Dr. Hashemi apparently stated that she was not Plaintiff's primary care physician.  See Interrogatory 25 (second set).  Interrogatory 25 asked whether it was true that any time Dr. Hashemi saw a patient, she becomes the primary care provider for that time and responsible for the patient's care.  Dr. Hashemi responded in part:  "I provided proper care to Plaintiff during every encounter I had with him.  A primary care provider is the doctor who is typically assigned to that specific patient.  But any doctor may provide treatment to any patient at any time based on need."  See Response to Interrogatory 25 (second set).

In Plaintiff's verified complaint, Plaintiff *inter alia* listed several California Prison Health Care Services ("CPHCS") policies, including one involving follow up visits.  After listing the regulations, Plaintiff alleged:  "The Plaintiff argues that Dr. Hashemi did fail to follow the regulations and medical protocols as issued by CDCR.  She did fail to treat the Plaintiff and did knowingly cause the Plaintiff pain and suffering.  Dr. Hashemi was put on notice by the specialist orders/recommendations as well as by the plaintiffs medical records the plaintiffs sick call slips and by the plaintiff in person of the danger and pain and suffering the plaintiff was in."  Doc. No. 12 at 12:11-17 (verbatim quote).

### b.    Legal Standard

In order to prevail on an Eighth Amendment claim for inadequate medical care, a plaintiff must show deliberate indifference to a serious medical need.  Colwell v. Bannister, 763 F.3d 1060, 1066 (9th Cir. 2014). This includes an objective standard (the deprivation was serious enough to constitute cruel and unusual punishment) and a subjective standard (deliberate indifference.)  Id. To meet the objective standard, a plaintiff must demonstrate the existence of a serious medical need.  Id.  "Such a need exists if failure to treat the injury or condition 'could result in further significant injury' or cause 'the unnecessary and wanton infliction of pain.'"  Id. (quoting Jett v.

1   Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)).  "A prison official is deliberately indifferent under

2   the subjective element of the test only if the official 'knows of and disregards an excessive risk to

3   inmate health and safety.'"  Id. (quoting  Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004)).

4   This "requires more than ordinary lack of due care."  Farmer v. Brennan, 511 U.S. 825, 835

5   (1994); Colwell, 763 F.3d at 1066.  "[T]he official must both be aware of facts from which the

6   inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

7   inference."  Farmer, 511 U.S. at 837; Colwell, 763 F.3d at 1066.  Deliberate indifference "may

8   appear when prison officials deny, delay or intentionally interfere with medical treatment, or it

9   may be shown by the way in which prison physicians provide medical care."  Colwell, 763 F.3d at

10  1066 (quoting Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988)).  Deliberate

11  indifference requires both a purposeful act or failure to respond to pain or possible medical need

12  and harm caused by the indifference.  Jett, 439 F.3d at 1096.  "Deliberate indifference is a high

13  legal standard."  Toguchi, 391 F.3d at 1060.  Mere "indifference," "negligence," "medical

14  malpractice," or even "gross negligence" are insufficient to establish deliberate indifference.

15  Lemire, 726 F.3d at 1081-82.

16      *Discussion*

17          Dr. Hashemi's motion and objections argue that she was not deliberately indifferent to

18  Plaintiff's medical conditions.  After reviewing the evidence and arguments, the Court agrees with

19  Dr. Hashemi and respectfully disagrees with the F&R.

20          Dr. Hashemi treated Plaintiff on November 2 for nausea and vomiting, and then transferred

21  him to the TTA, where Dr. Chang took over treatment of Plaintiff.  Dr. Hashemi did not treat

22  Plaintiff again.  There is no evidence that the November 2 visit was meant or intended to be a

23  review of Plaintiff's hospitalization or his discharge instructions.  Dr. Hashemi's unrebutted

24  interrogatory responses show that the purpose of the meeting was to treat Plaintiff then existing

25  symptom of nausea and vomiting.  Dr. Hashemi declared that she did not refuse to schedule a

26  follow up appointment with Dr. Krishan and was not involved in scheduling or approving the

27  follow up visit, but that the staff at TTA or Dr. Jackson would have been the ones who would

28  schedule the follow up visit.  Dr. Hashemi's interrogatory responses also show that follow up

appointments are generally arranged upon a prisoner's return from a hospital.  There is no evidence that Dr. Hashemi was aware that a follow up visit had not yet been scheduled, nor is there any evidence that Dr. Hashemi was aware that other prison personnel or the physicians who took over Plaintiff's treatment would not schedule the follow up visit.  There is no evidence that Plaintiff asked Dr. Hashemi to schedule the follow up visit or told Dr. Hashemi that the follow up visit had not been scheduled.  Further, when Dr. Hashemi saw Plaintiff on November 2, only three days had elapsed from the time of discharge.  There were eleven days before the two week follow up visit was due, and there is no evidence or argument from Plaintiff that explains why Dr. Hashemi should have been concerned about a two week follow up visit as of November 2, 2012.  If, for example, Plaintiff saw Dr. Hashemi on day thirteen after discharge and said that he did not have an appointment scheduled, there would be a stronger case for deliberate indifference.  Collectively, however, Dr. Hashemi's declarations and discovery responses do not reflect that she was aware of and disregarded an excessive risk to Plaintiff's health, i.e. she was not deliberately indifferent to a serious medical need.  See Farmer, 511 U.S. at 837; Colwell, 763 F.3d at 1066; Lemire, 736 F.3d at 1081-82.

Citing Page 12 of Plaintiff's verified complaint, the F&R concluded that "Plaintiff notified Dr. Hashemi regarding the recommended follow-up visit and the 'danger' of Plaintiff's 'pain and suffering' on November 2, 2012."  As quoted above, however, Page 12 indicates that Plaintiff informed Dr. Hashemi about his pain and suffering, not the follow up visit.  The relevant passage does not expressly address the follow up visit with Dr. Krishan.  Significantly, the sentence does not state that Plaintiff asked Dr. Hashemi to schedule the follow up appointment or to check to see if the follow up appointment had been made, nor does it state that Plaintiff told Dr. Hashemi that the follow up appointment had not been made.

Assuming that the relevant portion of Page 12 is evidence that Dr. Hashemi was aware that a follow up visit had been requested by Dr. Krishan, the Court's conclusion would not change.  Knowledge that Dr. Krishan had requested a follow up appointment by itself does not show deliberate indifference on the part of Dr. Hashemi.  As discussed above, the evidence shows that Dr. Hashemi did not refuse to schedule the visit, she was not involved in the scheduling of such

1   follow up visits, the TTA or Dr. Jackson (who did see plaintiff upon his return from Mercy) would

2   have scheduled the follow up visit, Dr. Hashemi saw Plaintiff to address his immediate complaints

3   of nausea/vomiting and not to go over discharge instructions, there is no indication that Dr.

4   Hashemi knew that a follow up appointment had not been made or that one would not be made by

5   other personnel, Plaintiff did not ask Dr. Hashemi to schedule the follow up visit, and Dr.

6   Hashemi saw Plaintiff when there were still eleven more days before the follow up appointment

7   was requested to occur.  Plaintiff's statements on Page 12 at best may suggest negligence, but not

8   the high standard of deliberate indifference.  See Lemire, 736 F.3d at 1081-82; cf. also Hardage v.

9   CBS Broad. Inc., 427 F.3d 1177, 1183 (9th Cir. 2006) (noting that "merely colorable" evidence is

10  insufficient to defeat summary judgment).

11          In supplemental briefing, Plaintiff states that Dr. Hashemi admitted that she was Plaintiff's

12  primary care provider, and that primary care providers are responsible for reviewing, approving,

13  and requesting follow up appointments that are recommended by a specialist.  CPHCS appears to

14  have a policy regarding outpatient services.[7]  CPHCS policy at Chapter 8, Section H, subsections

15  3 and 4 provides that the primary care provider is responsible for reviewing follow-up requests,

16  determining the need for follow ups, ordering an appropriate number of follow ups, and writing

17  orders for follow ups.

18          Despite Plaintiff's assertion, it has not been established that Dr. Hashemi admitted that she

19  was Plaintiff's primary care provider.  Plaintiff cites Exhibit G to his February 13, 2017

20  Supplemental Briefing.  Exhibit G consists of medical forms, one of which is a "Primary Care

21  Provider Progress Note" for November 2, 2012 that is signed by Dr. Hashemi.  See Doc. No. 89.

22  However, Dr. Hashemi's unrebutted response to Interrogatory 25 (second set) shows that a

23  primary care provider is a physician who is typically assigned to a specific patient, but that any

24  doctor may provide care based on need.  See Response to Interrogatory 25 (second set).  There is

25  no indication that a physician who treats a patient by need cannot fill out a "Primary Care Provider

26

27  [7] Plaintiff described the policy, but did not provide a copy of the policy as an exhibit.  A web search appears to have
    revealed the policy described by Plaintiff.  The policy can be found on page 4-8-5 of the document at the following
28  governmental website: http://www.cphcs.ca.gov/docs/imspp/IMSPP-v04-ch08.pdf .

Progress Note."[8]  Further, according to Interrogatory 25 (second set), Dr. Hashemi denied in response to a prior interrogatory that she was Plaintiff's primary care provider.  See id.  Similarly, in response to a request to admit that she was Plaintiff's primary care provider in 2012 at the E-Yard of the prison, Dr. Hashemi denied that she was Plaintiff's primary care provider and stated that she "only had a few encounters with Plaintiff while covering E yard for Plaintiff's PCP."  Response to Request For Admission No. 2.[9]  Dr. Hashemi also denied in response to interrogatories that she breached any duty owed to Plaintiff in connection with her treatment of him on November 2, including ordering a follow up visit with Dr. Krishan.  See Response to Interrogatories 23, 25 (second set).  Moreover, Dr. Hashemi's unrebutted verified response to interrogatories shows that she saw Plaintiff for the purpose of addressing his then existing medical condition, she did not see him for the purpose of going over discharge instructions with him, nor did she see him upon his return from Mercy Hospital.  See Response to Interrogatories 22, 23 (second set).  Finally, given the unrebutted explanation of a primary care provider by Dr. Hashemi, that she did not see or treat Plaintiff after November 2 is inconsistent with her being Plaintiff's primary care provider.  In light of this evidence, Plaintiff has not sufficiently shown that Dr. Hashemi was Plaintiff's primary care provider, or that the CPHCS policy regarding specialist follow ups applied to Dr. Hashemi during her treatment of Plaintiff on November 2, 2012.[10]

Finally, the F&R concluded that there was a genuine disputed issue of material fact regarding causation.  Part of the subjective element necessary to recover under an Eighth Amendment medical mistreatment claim is that a defendant's deliberately indifferent conduct caused the plaintiff harm.  See Jett, 439 F.3d at 1096.  In his opposition declaration, Plaintiff

---

[8] Consistent with this observation, there is a Primary Care Provider Progress Note dated November 9, 2012, that was signed by "C. Obguehi, PA."  See Hashemi Supp. Dec. Ex. B at p. 9.

[9] Dr. Hashemi's responses to Plaintiff's requests for admission is part of Exhibit D to Plaintiff's supplemental briefing.  See Doc. No. 89.

[10] Even if the Court were to assume that the CPHCS policy applied, the evidence would only demonstrate a breach of the policy.  This would be something akin to negligence or medical malpractice, which is insufficient to show deliberate indifference.  See Lemire, 736 F.3d at 1081-82.  Further, the policy itself does not negate Dr. Hashemi's evidence regarding her belief for the reason of the November 2 visit, her belief that others were responsible for scheduling the follow up visit with Dr. Krishan, and the absence of any indication that Dr. Hashemi knew that a follow up visit with Dr. Krishan had not been made or would not be ordered.

1    declared that Drs. Hashemi and Kokor never submitted a request for a follow up visit, they were

2    responsible for doing so, and that "do to the defendants deliberate indifference to the Plaintiffs

3    medical needs Plaintiff suffered in pain with varicies and ascities for 60 days."  Doc. No. 76 at p.6

4    (verbatim quote).  However, Plaintiff does not explain how Dr. Hashemi's failure to schedule the

5    follow up visit actually caused him harm.  For example, Plaintiff does not explain that a particular

6    procedure or treatment that Dr. Krishan planned to utilize was not actually performed.  Nor does

7    Plaintiff explain how a two week follow up visit with Dr. Krishan would have prevented any pain

8    from varices and ascites.[11]  Moreover, Dr. Hashemi's supplemental declaration indicates that

9    between October 30, 2012 and December 28, 2012, Plaintiff was seen by prison medical personnel

10   ten times.  See id. at Hashemi Supp. Dec. ¶ 8.  This includes seeing nurses, Dr. Jackson, Dr.

11   Hashemi, Dr. Chang, P.A. Ogbuehi, and Dr. Kokor.  See id. at Ex. B.  Ten medical "encounters"

12   between October 30, 2012 and December 28, 2012, suggests that Plaintiff's medical condition was

13   not being ignored by prison medical staff.  Given the generality of Plaintiff's assertions and the ten

14   visits with prison medical personnel, there is insufficient evidence that Dr. Hashemi's failure to

15   schedule a follow up appointment with Dr. Krishan caused Plaintiff harm.

16        Because the evidence does not sufficiently show deliberate indifference, summary

17   judgment in favor of Dr. Hashemi is appropriate.[12]  Since the F&R concluded that there was a

18   genuine disputed issue of material fact with the respect to both prongs of the subject element of

19   Plaintiff's Eighth Amendment claim, the Court respectfully declines to adopt this aspect of the

20   F&R.

21   //

22   //

23   //

24

---

[11] Dr. Hashemi declared that varices and ascites typically cannot be prevented, rather they are treated and managed.
See Hashemi Dec. ¶¶ 4, 5. Although Plaintiff declares that under the care of a different prison physician he has not
suffered varices or ascites, Plaintiff has not submitted evidence that these conditions *typically* are not prevented, nor
has he submitted evidence that indicates what treatment Dr. Krishan would have utilized or intended to utilize that was
not utilized by prison personnel.

[12] The Court notes, as did the F&R, that Plaintiff makes a number of assertions within unverified/unsworn briefs that
are unsupported by the evidence.  "A non-movant's bald assertions or a mere scintilla of evidence in his favor are both
insufficient to withstand summary judgment."  FTC v. Stefanchik, 559 F.3d 924, 929 (9th Cir. 2009).

<u>ORDER</u>

Accordingly, IT IS HEREBY ORDERED that:

1.    The F&R, issued March 2, 2017 (Doc. No. 90) is ADOPTED in part, consistent with the above analysis;

2.    Defendants' motion for summary judgment (Doc. No. 73) with respect to the claims against Dr. Kokor and Dr. Hashemi is GRANTED;

3.    Defendant's motion for summary judgment with respect to the claims against Defendant Tiggs-Brown is DENIED; and

4.    This case is referred to the Magistrate Judge for further proceedings.

IT IS SO ORDERED.

Dated:   April 4, 2017                      _____

                                            SENIOR  DISTRICT  JUDGE